**GREENHORN FARMS, a Partnership, Plaintiff–Appellant,**

v.

**Mike ESPY, Secretary of the U.S. Department of Agriculture; and U.S. Department of Agriculture, an agency of the United States Government, Defendants–Appellees.**

No. 92–36546.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided Nov. 2, 1994.

C. Tom Arkoosh and Michael Day, Roden & Arkoosh, Boise, ID, for plaintiff-appellant.

D. Marc Haws, Asst. U.S. Atty., Boise, ID, for defendants-appellees.

Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.

PER CURIAM:

The Disaster Assistance Act of 1988, Pub.L. No. 100–387, 102 Stat. 924 (codified in relevant part at 7 U.S.C. § 1421 note), was enacted to "provide for disaster payments to producers of any annual commercial crop ... who lose more than 35 percent of their 1988 crop due to the drought, hail, flood, or other natural disaster." H.R.Rep. No. 800, 100th Cong., 2d Sess. 27 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1192, 1195.

Greenhorn Farms appeals a summary judgment in favor of the Secretary of Agriculture on whether section 204 of the 1988 Act requires that all or only the marketable portion of "nonprogram crops" grown and removed from the ground are to be counted

in determining whether a farmer is entitled to disaster relief. We affirm.

The facts are stipulated. Over a third of Greenhorn's 1988 potato crop was unmarketable because of a drought-related condition known as "hollow heart." Greenhorn applied for disaster payments under section 204. The parties stipulate that the application was denied,

> based upon regulations adopted by the Commodity Credit Corporation, on behalf of the Defendants, which provide that in determining eligibility for disaster assistance payments, all of a crop which is actually harvested, or which could have been harvested, must be counted as production under Section 204 of the 1988 Act, and on the ground that there was no authority to exclude production not saleable because of quality.

See also 7 C.F.R. § 1477.3 (1989) (defining "actual production" to mean "the quantity of the crop actually harvested or which could have been harvested"). Greenhorn then filed this action under the Administrative Procedures Act, 5 U.S.C. §§ 701–706, challenging the Secretary's interpretation of the 1988 Act. The district court affirmed the Secretary. This appeal followed.

Section 204(a)(1)(A) of the 1988 Act provides that the Secretary "shall make a disaster payment available" to "producers on a farm" if certain criteria are met. A key factor in determining whether disaster payments are due is whether the "total quantity of the 1988 crop ... the producers ... are able to harvest" fell below a certain level. Greenhorn is entitled to disaster payments only if the quoted clause excludes crops which were grown and harvested but were not marketable.

In reviewing the Secretary's reading of section 204, we are to determine "if Congress

has directly addressed the statutory question at issue" and, if not, "whether the Secretary based his decision on 'a permissible construction of the statute.'" *Hanson v. Espy,* 8 F.3d 469, 472–73 (7th Cir.1993) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)). Congress did not mention crop marketability or quality in the detailed listing of criteria for disaster relief eligibility in part (1)(A) of subsection 204(a). Nonetheless, Greenhorn argues that part (3)(A) of this subsection "require[s] the Secretary to consider whether a crop has any market in determining the appropriateness of payment under Section 204."[1] The broad language of part (3)(A) is susceptible to several interpretations. The Secretary reads the subsection as pertaining to payment rates rather than to eligibility for disaster relief. The Secretary's reading is not unreasonable. Part (3)(B) expressly applies to payment rates, and eligibility is expressly covered in part (1)(A). In view of the detailed instructions for determining eligibility in part (1)(A), part (3)(A) need not be read as imposing still another eligibility criterion such as crop marketability.

The Secretary's decision not to consider crop marketability in determining eligibility for disaster payments is also supported by other provisions of the 1988 Act. Most important, in section 205 Congress provided expressly for disaster payments based on reduced crop quality. Although section 205 does not apply to nonprogram crops such as Greenhorn's potatoes, the fact that section 205 expressly provides for reduced quality benefits strongly suggests that Congress did not intend such benefits to be implied in section 204.[2]

Like section 204, section 203 (which provides disaster payments for peanut, sugar, and tobacco crops) refers to "total quantity of

---

1. Subsection 204(a)(3) reads:
   (A) The Secretary shall make disaster payments under subsection (a) on a crop by crop basis, with consideration given to markets and uses of the crops, under regulations issued by the Secretary.
   (B) For the purposes of determining the payment rates on a crop by crop basis, the Secretary shall consider as separate crops, and develop separate rates insofar as is practicable

for, different varieties of the same commodity for which there is a significant difference in the economic value in the market.
Pub.L. No. 100–387, § 204(a)(3).

2. As the Secretary suggests, Greenhorn probably presents its loss in terms of reduced quantity rather than reduced quality only because section 205 does not apply to nonprogram crops.

the 1988 crop ... the producers ... are able to harvest." During Senate debate, Senator Breaux expressed concern that even if producers of sugarcane and sugar beets were able to harvest a crop, sugar refiners might not be able to process it because of a lack of water. As the Senator said, "If the water is not there because of the drought, the sugarcane then becomes worthless." 134 Cong. Rec. 19,313 (1988). In response, Congress adopted subsection 203(f), providing that sugar beet and sugarcane farmers who are "unable to process the commodity into sugar" are "eligible for disaster payments ... for any loss in sugar production attributable" to the inability of "local processing plants to process sugar as a result of [disaster conditions] in 1988." Pub.L. No. 100–387, § 203(f). Adoption of this provision necessarily reflected the view of Congress that "worthlessness" of sugarcane and sugar beets would not be sufficient in itself to qualify crops for disaster payments—or, to put it another way, that crops were to be *included* in determining disaster payment eligibility even though they were unmarketable.[3]

Section 212 supports the same interpretation. This provision authorizes the Secretary to establish "de minimis yields" below which a crop loss is to be treated as total. Section 212 states that "[i]n no case may the de minimis yield be less than the amount of production that, *when valued at current market prices*, equals the average cost of harvesting the crop, as determined by the Secretary." Pub.L. No. 100–387, § 212 (emphasis added). If Congress had intended marketability to be considered in the context of section 204(a)(1)(A), it is reasonable to suppose Congress would have been similarly explicit.

The statute enacted to provide disaster relief for 1989 crops includes a directive similar to the exclusion Greenhorn asks us to read into section 204 of the 1988 Act. *See* Disaster Assistance Act of 1989, Pub.L. No. 101–82, § 104(a)(4), 103 Stat. 564, 571 (codi-

fied in relevant part at 7 U.S.C. § 1421 note). Even in the 1989 Act, however, Congress did not mandate that the Secretary exclude *all* unmarketable crops in determining eligibility for reduced quantity losses. On the contrary, section 104 of the 1989 Act directs the Secretary to exclude "at least 70 percent of ... commodities that cannot be sold in normal commercial channels" in "determining the total quantity of the 1989 nonprogram crop ... the producers ... are able to harvest." *Id.*

Furthermore, although the 1989 Act amended portions of the 1988 Act, *see id.* § 602, Congress did not amend section 204 of the 1988 Act even though it was fully aware that the Secretary interpreted section 204 to include unmarketable crops in determining eligibility for disaster payments. *See* H.R.Rep. No. 91, 101st Cong., 1st Sess. 26 (1989) (criticizing Secretary's interpretation of 1988 Act); 135 Cong.Rec. 13,535–36 (1989) (same). When Congress is aware of an agency's interpretation of a statute and takes no action to correct it while amending other portions of the statute, it may be inferred that the agency's interpretation is consistent with congressional intent. *See, e.g., North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 1925, 72 L.Ed.2d 299 (1982).

Finally, Greenhorn argues the Secretary's interpretation of section 204 could lead to an absurd result. Greenhorn points out that, to qualify for disaster payments based on reduced *quality* under section 205, a farmer must also qualify for disaster payments based on reduced *quantity*. *See* Pub.L. No. 100–387, § 205(b). Thus, as the Secretary reads the 1988 Act, a farmer who does not qualify for aid under section 204 because the crop was not sufficiently reduced in size would not qualify for aid under section 205 even if the entire crop is unmarketable. This would be an absurd result, Greenhorn argues, because Congress clearly intended to provide relief for loss due to reduced quality under section 205.

**3.** Senator Breaux also expressed the opinion that even without the amendment the statute was susceptible to the interpretation suggested by Greenhorn. *See* 134 Cong.Rec. 19,313. However, the House Conference report made no mention of the senator's broad interpretation of the statute—an interpretation that would render subsection 203(f) superfluous. *See* H.R.Conf.Rep. No. 830, 100th Cong., 2d Sess. 54 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1295, 1308.

Since Greenhorn's potatoes are nonprogram crops, and nonprogram crops are never eligible for reduced quality disaster benefits under section 205, the hypothetical has no bearing on Greenhorn. Moreover, even if section 205 applied to Greenhorn, the hypothetical is highly unlikely. Under the provisions of section 212 regarding "de minimis yields," a farmer with a large unmarketable crop will be eligible for relief even if the crop is too large to justify relief based solely on reduced quantity.

We conclude that the Secretary's interpretation of the phrase "total quantity of the 1988 crop ... the producers ... are able to harvest" as including all crops "grown and removed from the ground" even though some of the crops are not marketable, is reasonable. Accordingly, the judgment of the district court is

**AFFIRMED.**

